And to the extent that we're worried about this covers too many diseases, or to the extent that you haven't worried about that, I do think that we're talking about diseases that are treated with this particular family of thigh-abiding drugs producing 6TG. It is limited. It doesn't cover all medications for all diseases. To the extent we're talking about preemption, I'd like to hit that for a moment. I mean, even a claim that says, use this drug and put in an amount with 10 mg per 10 pounds of body weight, would in a sense preempt, I think according to Mayo, a law of nature, or a natural phenomenon that a particular drug's dosages, the efficacy of it is correlated to body weight. But nobody would dream of saying that's the sort of ancient secret of nature that this court has been concerned about. In terms of whether the information... Let me ask you. The district court said that what the patentee claims to have discovered is this correlation. Do you agree with that? That's what the patentee is claiming to have discovered is this correlation? Your Honor, let me separate that into two steps. First of all, what we came up with that was new was not administration of drugs or how to measure metabolites using HPLC or anything like that, but what the correlation was. On the other hand, and then we put that together in an altogether new process, all of those steps, and we would say we invented the process and came up with the correlation. But whether the correlation is the last step here that was invented shouldn't matter. A quick hypo, I think, will help here. For example, suppose everybody always knew about the correlation and everybody always knew how to administer the drugs, but the problem was people didn't know how to measure it accurately. And so what we came up with were accurate ways of measuring the metabolites in the blood. We put together the exact same claims that are here in the exact same ways afterwards and patented them. The fact that what was invented last was the method of measurement, which, by the way, was true in deer as well, doesn't matter. It doesn't matter whether the algorithm was the last invented part of it. It's the same claims, and they have to be evaluated in the same way. I think deer is pretty clear on that, and I think Bilski is as well. Do you think that deer effectively overruled fluke? Yes, Your Honor. I think it overruled... I think maybe Justice Stevens thinks so, too, if you read his separate opinion in deer. Certainly the mode of analysis in fluke, which, you know, this court used to call it the point-of-novelty approach. Your Honor may remember that. But in Walter, this court specifically discussed whether the point-of-novelty approach was the right way to think about things and said it isn't. But in any event, I think that certainly deer threw out that part of fluke. And I think to the extent that there's any question here whether an invention, a process that results in providing information... My brother here said that it has to be practical use. I don't think that's a test anymore, but if it were, diagnostic information that's critical in the treatment of severely ill people is a practical use. And arrhythmia also ended with the provision of information where you compared the number that came out to a pre-existing level. And the court specifically said that was fine. And that hasn't been overruled either. Finally, I guess I would note that in terms of preemption, there may be other ways to measure toxicity and efficacy in the future. It may be that you can come up with scans or other things like that that measure how the drug is working and whether it's hurting parts of the body in an actual way. I will say there's also a way that's already been used, which is one of the reasons that the drug can act in different ways for different people is that different people have different levels of an enzyme called TPMT. And depending on how much of that enzyme you've got, how high the activity is, it metabolizes this drug differently. And so there are tests for measuring the level of TPMT in someone's body and the activity of that, and therefore predicting what the doses should be, what would be toxic, what wouldn't. Of course, none of this is in the record before us. Well, it's actually... I'm sorry. I probably went too far. But certainly the TPMT activity issue is in the specifications, and we can ignore everything else I said, but certainly the concept that somebody could look at that is something you could draw, I think, from the specifications themselves. I don't have anything further, but you may have questions for me, Your Honor. Well, I think we've probably exhausted the subject for the moment. We appreciate the letter you've offered to jointly submit and appreciate the very extensive, carefully prepared argument, and we'll take the appeal under advisement. Thank you very much.